WESTERN COAL & MINING CO. *v.* WATTS.

Opinion delivered December 22, 1917.

1. MASTER AND SERVANT—INJURY TO SERVANT—OPERATION OF MINE—STATUTORY DUTY OF MASTER—JURY QUESTION.—A mine operator is liable for an injury to an employee resulting from a failure to furnish props as required by Kirby's Digest, § 5352, irrespective of the issues of assumed risk and contributory negligence; and it is a question for the jury whether the necessary props were requested, and whether the mine operator's failure to supply them was the proximate cause of the injury.

2. MASTER AND SERVANT—INJURY TO SERVANT—VIOLATION OF STATUTE.—Where the violation of any statute enacted for the safety of the employees, contributes to the injury or death of an employee, the master can not invoke the defense of contributory negligence, and assumption of risk on the part of the employee.

Appeal from Franklin Circuit Court, Ozark District; *Jas. Cochran,* Judge; affirmed.

*Thos. B. Pryor,* for appellant.

1. The court erred in refusing a peremptory instruction for defendant. 101 Ark. 205. It was plaintiff's duty to make and keep the entry safe. 146 Ia. 489; 41 W. Va. 620.

2. The court erred in giving the instructions for plaintiff and in refusing those of defendant. The props were not ordered, but were furnished. Plaintiff clearly assumed the risk. Cases *supra.*

*J. H. Evans,* for appellee.

The act of 1913 takes away the defense of assumed risk, and contributory negligence. This was a clear violation of a statute. 101 Ark. 205 is not applicable. Here the failure to furnish props when requested was the proximate cause of the injury and there was no assumption of risk. The jury were properly instructed and the verdict is sustained by the evidence. There is no error.

### STATEMENT OF FACTS.

The appellant is a corporation of Missouri, and owns and operates a coal mine in the Ozark district of Franklin County, Arkansas. On the 11th of September, 1914, the appellee, an experienced miner, was in the employ of defendant, and was engaged in driving what is known as a cross-entry in appellant's mine. While so engaged rock fell from the roof of the entry which severely injured the appellee, and for the damages resulting to him from this injury he instituted this suit, alleging that it was the duty of the appellant to keep the appellee supplied with timbers to be used as props in making his working place secure; that appellee several times requested of the appellant to deliver him props, which appellant, through its servants, promised to do but failed; that appellee, relying on the promise, continued to work in the entry until the rock fell and produced the injuries for which he sued.

The appellant denied specifically the allegations of negligence, and set up affirmatively the defenses of contributory negligence and assumption of risk.

The cross-entry was something like twelve to fourteen feet wide. A track was laid on the floor of the entry. The track is laid in the entry near what is termed the "rib side." One side of the entry, next the coal, is called the "gob" side, where the rock which is taken down is thrown while the work of taking down the rock from the roof is progressing. The other side is termed the "rib" side of the entry. The entry had been driven a distance of about seven feet beyond where the rock fell. It was about twenty or twenty-five feet from the point where appellee received his injury to the face of the entry, and he and his assistant had been at work driving the entry about two days when the injury occurred.

It was not usual and customary to put props on the rib side, but where a greater space was made on that side by the kicking back of shots it became necessary to prop, and props were placed on that side. This had been done in a number of places back behind the place of the injury. The rock was in what appellee designated a "mud slip." If such rocks are not timbered at the right time they will sag down and give way. There was not enough space between the rock in the roof and the floor to allow for the passage of the mule and it was necessary to shoot part of the rock down. It was appellee's purpose to prop the side next to the rib and then shoot it down. Appellee called for the props, but they were not furnished. Some props were furnished, but they were not of the right length. They needed three props to set on the rib side, but could not get them for the top. The appellee needed props something like four feet and nine inches in length. He had ordered such props on the morning he was injured and also on the evening before. They then tried to prize the rock down and it did not give. They examined its condition and decided that it was all right to go under it and clean up the rock, and while they were doing so it came down. The props were nec-

essary because the space was wider there. The appellee wanted the props for the purpose of brushing the rock down. If there was a rock extending out over the track they propped the rock so as to take down only that that was right over the track. It was their intention to take down all the rock that would come down with the shot.

The appellee stated that if he had had the props he would have put them under the rock. The right-of-way was three feet guage, leaving two feet on either side. The rock over the track had to be shot down, and that would have left six inches on the side which appellee stated he would have propped if the props had been furnished him. It was customary to put the track from eighteen to twenty inches from the rib side of the entry. In some places the distance between the track and the rib is greater than this by reason of the fact that shots kick back and make a larger place, which was the case at the place of the injury. Instead of being eighteen inches it was from two and a half to three and a half feet. It was not customary to put props on the rib side, but where greater space was made on the rib side on account of the shots kicking back then it became necessary to place props on that side. This had been done in a number of places back behind the place where the injury occurred. There was a space of three and a half feet, according to one of the witnesses, from the rail to the rib on the rib side, and that left the rock without propping for a space of about eight feet and a half.

On cross-examination, the appellee testified that he had tested the rock and it looked like it was perfectly safe. He was asked if he was not mistaken in his judgment, and answered: "I probably was; it shows that way."

The above are substantially the facts as they might have been found by the jury under the evidence. The cause was submitted to the jury under instructions, and the verdict and judgment were in favor of the appellee. This appeal seeks to reverse the judgment. Other facts stated in the opinion.

WOOD, J., (after stating the facts).  (1)  The appellee predicates his cause of action upon section 5352 of Kirby's Digest, which provides: "The owner, agent or operator of any mine shall keep a sufficient amount of timber when required to be used as props, so that the workmen can at all times be able to properly secure the said workings from caving in, and it shall be the duty of the owner, agent or operator to send down all such props when required and deliver said props to the place where cars are delivered."

The appellant contends that the undisputed evidence shows that it was the duty of the appellee to make his place of work safe, that under the undisputed evidence the props were not required or desired by him for the purpose of making his working place safe, and that it was his duty, under his contract, to make his place safe by prizing or shooting down the rock, or in some other way than by the use of props to hold up the rock.  To sustain this contention appellant relies upon the case of *Western Coal & Mining Co.* v. *Fountz,* 101 Ark. 205.  But in that case the undisputed evidence showed that the timbers were not ordered to prop up the loose rock and would not have been used for that purpose if they had been furnished before the injury occurred.  Such being the uncontradicted evidence, we held that "the failure to furnish props had nothing to do with the injury, and the result would have been the same if props had been furnished."  And further on we said: "Even though the workmen were not negligent in working under the loose rock, the injury resulted solely from an error of judgment on their part in concluding that the rock would not fall unless shaken down by shot firing, and that it would be safe to work under it for the remainder of the day and until it could be ascertained whether or not the shot firing would bring it down."  But the facts of that case are entirely different from the facts here.  Here the jury were justified in finding from the testimony of the appellee and his assistant, who was working with him at the time of his injury, that the props were ordered by

them so as to enable them to keep the rock from falling and make the place safe while they were working under the same. The witness expressly testified that his purpose in ordering the props "was to prop the rib side so as to make it safe on that side to prevent the rock from falling." Witness stated: "If the props had been furnished he would have used the props to prevent the rock from falling," and he stated further that "going so long without sufficient props caused this to break. It was a treacherous piece of roof."

True, the witness, on cross-examination, stated that in trying to wedge it down, and prizing it down and testing it, it seemed to him that he made a mistake in judgment, and that after so testing it and after trying to prize it down, they sounded it with a pick and concluded it was safe to work under. But when the testimony of the appellee is considered as a whole it is very clear that it made a question for the jury to determine as to whether or not appellee demanded the props for the purpose of using the same to make his place safe, and whether or not, under the circumstances, they were necessary for that purpose, and whether, if the same had been furnished as requested, they would have been used for the purpose indicated and thereby have prevented the injury to the **appellee.**

The issue therefore as to whether or not the failure of the appellant to furnish props as the statute requires was the proximate cause of the appellee's injury was one, under the evidence, for the jury to determine. The court properly submitted this issue to the jury by declaring what the statute required, and telling the jury, in effect, that if appellant failed to furnish props and this failure was the proximate cause of appellee's injury that the appellant would be liable even though the jury should find that the appellee made a mistake of judgment and that but for such mistake he would not have been injured.

(2) The court correctly instructed the jury, in effect, that if the proximate cause of the injury was the failure of appellant to furnish props that neither the de-

fenses of contributory negligence nor assumed risk could avail the appellant. If, under the evidence, the proximate cause of the injury was the failure to furnish props as the statute required, then appellant had violated this statute (Act 175, Acts 1913). Where the violation of any statute enacted for the safety of the employees contributes to the injury or death of an employee the corporation can not invoke in its defense the contributory negligence and assumption of risk on the part of the employee.

The theory of the defense was that the uncontradicted evidence showed that the appellee would not have used, and that it was impracticable for him to have used the props if the same had been furnished him, and that therefore the failure to furnish props was not the proximate cause of appellee's injury. But, as we have stated, under the evidence this was an issue of fact for the jury. Appellant further contends that under the evidence such props as the appellee ordered had been delivered before the rock fell, and that the appellee did not use or attempt to use them to prop the rock, and that therefore the failure to furnish the props was not the proximate cause of his injury. This was also an issue for the jury, and the theory of appellant was correctly presented in prayers for instructions presented by appellant which the court granted.

There is no reversible error in the record, and the judgment is therefore affirmed.