WESTERN COAL & MINING CO. v. GREESON.*

(Circuit Court of Appeals, Eighth Circuit. November 2, 1922.)

No. 5735.

1. **Master and servant** ⊚⟫285(10)—**Proximate cause of miner's injuries held for jury.**

In a miner's action for injuries, based on negligent failure to furnish props, as required by Crawford & Moses' Dig. Ark. § 7271, evidence *held* to authorize submission to the jury of the question whether plaintiff's failure to hollow out the floor and use the props furnished, or his removing coal when he knew that an overhead rock was in a dangerous condition, was the proximate cause of the injury.

2. **Evidence** ⊚⟫501(5)—**Witness' opinion as to proper precautions for miner to use excluded.**

Where witness testified that the proper way for a miner to determine whether it was safe for him to work under an overhead rock was to sound the roof of the mine with a pick, and that witness made no such determination, the exclusion of his opinion that the miner should have removed this rock was proper.

3. **Evidence** ⊚⟫271(13), 317(2)—**Testimony of employees, whose duty was to supply props, that miner had requested props, admissible.**

In an action for injuries to a mine employee, claimed to have been due to employer's failure to furnish suitable props, testimony of employees, whose duty it was to bring props and transmit requests therefor, that plaintiff had requested props, was admissible as against the objection that the statements were self-serving and hearsay.

4. **Appeal and error** ⊚⟫1050(1)—**Admission of evidence, substantially the same as testimony previously admitted without objection, held not prejudicial.**

It was not prejudicial error to admit testimony of other witnesses, which was in substance the same as plaintiff's previous testimony, admitted without objection.

5. **Trial** ⊚⟫260(1)—**No error to refuse request covered by charge given.**

Where a request was covered by the charge given, it was not error to refuse it.

6. **Trial** ⊚⟫252(1)—**Proper to refuse request which has no basis in the evidence.**

A request which has no basis in the evidence should not be given.

7. **Trial** ⊚⟫219—**Ambiguous terms should be explained to jury.**

Where a statute is read to a jury as part of the charge, the court should define and explain any term the meaning of which is ambiguous and material to the issues.

⊚⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests'& Indexes

*Rehearing denied December 12, 1922.

8. **Master and servant ⬅➡118(5)—Mine props to be furnished when "required."**
The word "required," in Crawford & Moses' Dig. Ark. § 7271, providing that mine owners shall furnish mine props when required, means requested or demanded, and does not mean needed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Require.]

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action by Robert Greeson against the Western Coal & Mining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

James B. McDonough, of Ft. Smith, Ark., for plaintiff in error.

Jeptha H. Evans and Charles I. Evans, both of Booneville, Ark., and Willard Pendergrass, of Altus, Ark., for defendant in error.

Before HOOK and STONE, Circuit Judges, and TRIEBER, District Judge.

STONE, Circuit Judge. This is an action for personal injury damages by a miner, Robert Greeson, against the mine owner, Western Coal & Mining Company, based upon negligent failure to furnish mine props, which resulted in the fall of a large rock from the roof of the mine room onto Greeson. From a verdict and judgment for the plaintiff, the company sues this writ of error.

[1] It is urged that a peremptory instruction should have been given at the close of the evidence. An Arkansas statute provides:

"The owner, agent or operator of any mine shall keep a sufficient amount of timber when required to be used as props, so that the workmen can at all times be able to properly secure said workings from caving in, and it shall be the duty of the owner, agent or operator to send down all such props when required and deliver said props to the place where cars are delivered." Crawford & Moses' Dig. § 7271.

Greeson, who was digging coal on the day of the accident testified that there was a large rock in the roof of the mine room where he was working; that the roof in other places was supported by props of 4 feet or more in length; that, early on the morning of the injury, he requested props 3 feet 9 inches long to secure this place be sent down to him: that no props were sent and that, while removing coal, about noon, this rock fell and injured him. There was other supporting testimony. The argument in favor of the peremptory instruction is that the proximate cause of the injury, as shown by all the evidence, was either that Greeson did not hollow out a place in the floor and use four-foot props (which were in the room) or that his act in cutting out the top coal, that morning, was done with full knowledge that such coal supported the rock and that the rock was in a dangerous condition.

As to the first ground, the evidence was contradictory as to whether or not he could have hollowed out the floor and thus used the longer props which were available. As to the second ground, the evidence, and the legitimate inferences which could be drawn therefrom, were contradictory. For Greeson, the evidence was that the rock was in the corner of the mine room where the "ribs" or sides of the room partially

supported it; that there were props in place at about 4 feet from the coal face and one as near as 2 feet to this corner; that miners test the security of such rocks by "sounding" them with a pick; that he had sounded this rock that morning and, while he thought it better to have props under it, believed he could safely remove the coal. Because the evidence authorized submission to the jury, this assignment of error is denied. See Western Coal & Mining Co. v. Watts, 131 Ark. 562, 199 S. W. 921.

[2] Error is claimed because of exclusion of the evidence of J. B. Carby to the effect that the proper thing for plaintiff to have done would have been to take the rock down instead of propping it. What due care would have dictated to Greeson depended upon the condition of the roof, including this portion which fell. That condition could be ascertained only by pick "soundings," according to this witness. He made no such examination but undertook, because of his familiarity with the room, before and after the accident, to thus testify as an expert. As he lacked the very information which he said was essential to determine what should be done, his testimony, as to that matter, was properly excluded.

[3, 4] It is urged that the testimony of Lee Dickson and of Ollie Duffin to the effect that Greeson had told them he had ordered "three-nine" props should have been excluded. Dickson was the driver and Duffin the "pusher" of the mine car. The method of getting props was for the miner, who wanted them, to request them of the "cager" (who puts the coal on the shaft elevator and attends to other duties at the bottom of the shaft) or of the driver. This request is communicated by the "cager" or driver to the proper persons who send down the number and dimensioned props required. The props are then loaded on the mine car and taken by the driver and "pusher" to the miner. The evidence, for Greeson, is: That he requested the props from the "cager" when he came in to work that morning. That he made inquiries of the driver and "pusher" regarding them, telling them what props he had ordered. It is confirmation, by the driver and "pusher," of these requests and inquiries to them that is the subject of this claim of error. It is contended that such statements are self-serving and hearsay. We think this claim should be denied for two reasons: First, they were parties whose duty it was to bring the props and to transmit requests therefor; second, Greeson was permitted, without objection, to testify to the substance of these statements and this following evidence could not have been prejudicial.

[5, 6] Error is claimed in the refusal to charge as presented in defendant's requests numbered 2, 4, 5, 6, 7 and 9. The matter in requests 2, 4, 5 and 9 was sufficiently covered by the charge given. Requests 6 and 7 presented the theory that the company was not liable for not sending down the props, if Greeson did not intend to and would not have used them until after he had taken down the top coal. There was no evidence that Greeson did not intend or would not have used the props until after this top coal was removed. Therefore, there was no basis, in the evidence, for these requested charges and they were properly refused.

[7, 8] The final error urged relates to the reading of the statute (here in question and above quoted) to the jury without a definition of the word "required." If a statute is read to a jury, as part of the charge, it is the duty of the court to define and explain any terms therein, the meaning of which is ambiguous and material to the issues of the case. However, all errors are not substantial enough to require reversal of the case. Conceding that the term "required" should have been defined, how was plaintiff in error prejudiced? It claims that "required" may mean needed or may mean requested or demanded; that, as used in this statute, it means needed; that, because the court failed to so define it, the jury might have considered it as meaning requested or demanded. We think the meaning of "required," in this statute, is requested or demanded, and that it does not mean needed. Western Coal & Mining Co. v. Watts, 131 Ark. 562, 199 S. W. 921. Similar statutes have been so construed, Wojtylak v. Kansas & Texas Coal Co., 188 Mo. 260, 87 S. W. 506; Western A. C. & C. Co. v. Beaver, 192 Ill. 333, 61 N. E. 335.

The judgment is affirmed.

Judge HOOK, who participated in the hearing, discussion and determination of this case, died before the preparation of this opinion.